**UNITED STATES, Appellee,**

v.

**Private E2 Audrey J. VALIGURA, United States Army, Appellant.**

**ARMY 9800225.**

U.S. Army Court of Criminal Appeals.

6 July 1999.

For Appellant: Major Leslie A. Nepper, JA; Captain John C. Einstman, JA (on brief); Colonel Adele H. Odegard, JA; Major

Leslie A. Nepper, JA; Captain John C. Einstman, JA (on brief); Captain Katherine A. Lehmann, JA.

For Appellee: Colonel Russell S. Estey, JA; Lieutenant Colonel Eugene R. Milhizer, JA; Captain Joseph A. Pixley, JA (on brief); Captain Mary E. Braisted, JA.

Before SQUIRES, Senior Judge, ECKER, and TRANT, Appellate Military Judges.

## OPINION OF THE COURT

TRANT, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to her pleas, of conspiracy to distribute marijuana and failure to go to her appointed place of duty; and, pursuant to her pleas, of failure to obey a lawful order and wrongful distribution of marijuana in violation of Articles 81, 86, 92, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, 892, and 912a [hereinafter UCMJ]. The approved sentence was to a bad-conduct discharge, confinement for six months, forfeiture of all pay and allowances, and reduction to Private E1.

The case, which is before the court for automatic review under Article 66, UCMJ, was originally submitted for review on its merits. On 8 February 1999, we specified the following issues:

### I

WHETHER THE DECISIONS IN *UNITED STATES V. LABOSSIERE,* 13 U.S.C.M.A. 337, 32 C.M.R. 337 (C.M.A. 1962); AND *UNITED STATES V. SPROLES,* 48 C.M.R. 278 (A.C.M.R.1974), REPRESENT THE CURRENT STATE OF MILITARY LAW IN LIGHT OF THE SUBSEQUENT DECISIONS IN *UNITED STATES V. GARCIA,* 16 M.J. 52 (C.M.A.1983) AND *UNITED STATES V. ANZALONE,* 43 M.J. 322 (1995). *See also United States v. Earhart,* 14 M.J. 511 (A.F.C.M.R.1982), *aff'd,* 18 M.J. 421 (C.M.A.1984); *United States v. West,* 13 M.J. 800 (A.C.M.R.1982); *United States v. Duffy,* 47 C.M.R. 658, 1973 WL 14807 (A.C.M.R.1973); *United States v. Tuck,* 28 M.J. 520 (A.C.M.R.1989); *United States v.*

*Hayes,* ARMY 9700433 (Army Ct.Crim. App. 28 Sept. 1998) (unpub.);

and,

### II

WHETHER APPELLANT'S CONSPIRACY CONVICTION UNDER ARTICLE 81, UNIFORM CODE OF MILITARY JUSTICE MUST BE SET ASIDE BECAUSE THE EVIDENCE SHOWS THAT HER SOLE CO–CONSPIRATOR WAS AN UNDER COVER GOVERNMENT AGENT.

Having considered the briefs of both parties, we answer the second specified issue in the affirmative and will discuss the first specified issue, which is not susceptible to an unequivocal answer, in more detail.

This case involved a garden-variety undercover drug deal in which a Criminal Investigation Command drug suppression team (DST) registered source (RS) introduced a military police investigator (MPI) assigned to the DST to appellant, a potential seller of marijuana. The undercover MPI then arranged directly, without any further involvement of the RS, to purchase marijuana from the appellant, and the MPI and appellant made a direct exchange of money for drugs. The conspiracy charge in this case is based solely on this transaction and the MPI is the only alleged co-conspirator.

■ The "bilateral" theory of conspiracy is the traditional concept of the offense. Under the bilateral theory, in order for a conspiracy to exist, at least two people with requisite criminal intent must agree to the commission of an offense. In *Morrison v. California,* Justice Cardozo writing for a unanimous Court noted that:

> It is impossible in the nature of things for a man to conspire with himself. In California as elsewhere conspiracy imports a corrupt agreement between not less than two with guilty knowledge on the part of each.

291 U.S. 82, 92, 54 S.Ct. 281, 78 L.Ed. 664 (1934) (citations omitted). The criminal agreement is the essence of the conspiracy offense. *See Iannelli v. United States,* 420

U.S. 770, 777 at n. 10, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *see also* Wayne R. La-Fave & Austin W. Scott, Jr., *Criminal Law* § 6.4(d)(2d ed.1986). A criminal agreement requires plurality of criminal intent, a meeting of the minds. "[I]t must be shown that the requisite intent existed as to at least two persons. That is, there must be a common design, so that if only one party to the agreement has the necessary mental state then even that person may not be convicted of conspiracy." LaFave & Scott, *supra,* § 6.4(e)(6) (citations omitted).

■ The "unilateral" theory is of comparatively recent origin. Under the unilateral theory, the offense of conspiracy may be committed when the accused, with the intent to agree to the commission of an offense, enters into what appears to be an agreement with another (usually an undercover police officer posing as a fellow criminal) to commit that offense, even though the other person has no criminal intent. Therein the "agreement" is a legal fiction, a technical way of transforming the criminal intentions of the deceived person into criminal activity. *See generally* Dierdre A. Burgman, *Unilateral Conspiracy: Three Critical Perspectives,* 29 DePaul L.Rev. 75, 93 (1979). So long as the duped person has the requisite criminal intent, there is no requirement for the pretender to have the requisite criminal intent.

■ Prior to *United States v. Garcia,* 16 M.J. 52 (C.M.A.1983), military law of conspiracy always required "two [criminals] to [do the conspiracy] tango." *See United States v. LaBossiere,* 13 U.S.C.M.A. 337, 32 C.M.R. 337, 1962 WL 4498 (C.M.A.1962). The rationale for this so-called "bilateral theory of conspiracy" was that since conspiracy required an agreement of two or more persons possessing criminal intent, one could not conspire solely with oneself. *See United States v. Nathan,* 12 U.S.C.M.A. 398, 30 C.M.R. 398, 1961 WL 4460 (1961). The simple logic of this proposition was obscured, when, in furtherance of "consistency of verdicts," otherwise valid conspiracy convictions were set aside solely because alleged co-conspirators were acquitted. *See, e.g., United States v. Kidd,* 13 U.S.C.M.A. 184, 32 C.M.R. 184, 1962 WL 4476 (1962). A requirement of two

*convicted* criminals rather than two criminals entering into an agreement made little sense even in joint trials, and no sense in separate trials. Thus, the court in *Garcia,* rejected the "foolish consistency" of acquitting one conspirator merely because the co-conspirator was acquitted in a separate trial. 16 M.J. at 57. Although the court discussed the historical underpinnings of the "bilateral theory" and noted that the modern trend was toward a "unilateral theory," the limited question certified and answered in *Garcia* was the "consistency of verdict" issue. The court did not adopt wholesale the "unilateral theory" and did not disturb the basic concept that conspiracy requires an agreement between two or more criminals.

In *United States v. Tuck,* 28 M.J. 520, 521 (A.C.M.R.1989), this court read *Garcia* very broadly and concluded that our superior court in *Garcia* had expressly rejected the "bilateral theory" in favor of the "unilateral theory." Applying the unilateral theory, this court held that "the culpability of the other alleged conspirators is of no consequence." *Id.* We rejected Tuck's argument that, because his co-conspirator was insane and did not possess the ability to enter into an agreement, the plea was improvident. Therefore, we held, "the possible mental incapacity of the coconspirator is of no legal relevance to the accused's culpability." *Id.* In effect, *Tuck* held that while it still required two persons to conspire, it no longer required two criminals to conspire.

This court's conclusion in *Tuck,* that *Garcia* adopted the "unilateral" theory of conspiracy, has been seriously undermined by *United States v. Anzalone,* 43 M.J. 322 (1995). Anzalone transmitted national defense information to an individual who he believed to be a Soviet agent, but who was in fact an undercover agent of the Federal Bureau of Investigation.

Anzalone's conviction for *attempted* conspiracy to commit espionage was upheld by our superior court in a fractured opinion. Judge Crawford's lead opinion on the certified issue determined that *attempted* conspiracy between an accused and a government agent is an offense under the UCMJ, and was concurred in by her fellow judges.

Judge Crawford's additional conclusion, that conspiracy between an accused and a government agent is also a valid crime, does not appear to be a holding of the court for two reasons. First, as Anzalone was not charged with the crime of conspiracy, any purported holding concerning that offense is *dicta* in its purest form. Second, and more importantly, Judge Crawford was not joined by any of her brethren on that specific point. Reflecting this parting of the ways, Judge Gierke, joined by Judge Cox, wrote:

> The lead opinion rests in part on the premise that in *United States v. Garcia,* 16 M.J. 52, 54 (1983), this court adopted the "Unilateral Approach" to conspiracy formulated in the Model Penal Code. ¶ 11. I disagree with this premise and join Judge Wiss in reading *Garcia* as holding only that acquittal of all co-conspirators does not require that a conspiracy conviction be set aside. *Garcia* does not hold that a conspiracy can be formed without a meeting of the minds.

*Anzalone,* 43 M.J. at 326 (concurring in the result). Judge Wiss was more explicit in his disagreement with the lead opinion when he stated:

> [T]he lead opinion is wrong, in my view. Conspiracy under Article 81, UCMJ, 10 USC § 881, requires an agreement, a meeting of the minds. *See* para. 5c(2), Part IV, Manual, *supra* ("The agreement in a conspiracy need not be in any particular form or manifested in any formal words. It is sufficient if the minds of the parties arrive at a common understanding. ... "). In the factual context of an alleged co-conspirator being a play-acting, undercover government agent, there can be no such actual meeting of the minds as a matter of law—only a mistaken belief by an accused that there has been such a meeting.

> From this perspective, the lead opinion's reliance on *United States v. Garcia,* 16 M.J. 52 (C.M.A.1983), is misplaced. The case before us involves an accused who cannot be convicted of conspiracy because

it was *legally impossible* to have reached an agreement to commit an offense. In contrast, the issue in *Garcia* asked whether an accused can be convicted where another jury in another case for whatever reason did not find beyond a reasonable doubt that *in fact there was* such an agreement. Those questions are substantially different, and so are their answers. Accordingly, notwithstanding the lead opinion's assertion, *Garcia* did not change the substantive law that a conspiracy in military jurisprudence requires a meeting of the minds.

*Anzalone,* 43 M.J. at 328 (concurring in the result)(footnote omitted). Then–Chief Judge Sullivan, who stated that he believed the lead opinion misapplied the law, noted the apparent conflict between *LaBossiere* and *Garcia,* without directly resolving it. *Anzalone,* 43 M.J. at 327 (concurring in the result). As a result of *Anzalone,* we believe, the question of whether the "unilateral theory" or "bilateral theory" applies to the military law of conspiracy is, at best, an open question.

The power to define criminal offenses is entirely legislative. *Whalen v. United States,* 445 U.S. 684, 689, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)(citing *United States v. Wiltberger,* 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820)). An essential element of every conspiracy is the agreement. The requisite nature of the agreement, including the intent, objective, and plurality, is a legislative determination. The state jurisdictions that have "adopted" the "unilateral theory" have done so by legislative fiat,[1] not judicial construction. *See, e.g., State v. Roldan,* 314 N.J.Super. 173, 714 A.2d 351, 355 (1998); *State v. Welty,* 729 S.W.2d 594 (Mo.App.1987); *State v. Conway,* 193 N.J.Super. 133, 472 A.2d 588 (1984); *see also Bishop v. State,* 969 S.W.2d 366, 369 (Mo.App.1998). The courts have properly focused on discerning legislative intent. *See, e.g., Tidwell v. State,* 644 N.E.2d 557 (Ind.1994); *People v. Berkowitz,* 50 N.Y.2d 333, 428 N.Y.S.2d 927, 406 N.E.2d 783 (1980). Congress criminalized conspiracy within military law when it enacted Article

---

1. One state legislature has amended their conspiracy statute to eliminate the "rule of consistency" but otherwise retain the "bilateral theo-

ry." *See State v. Pacheco,* 125 Wash.2d 150, 882 P.2d 183 (1994).

81, UCMJ, in 1950. Article 81, UCMJ, was based on 18 U.S.C. § 371 (1948),[2] which was, and still is, based on the "bilateral theory." Compare United States v. Bazzell, 187 F.2d 878, 883 (7th Cir.1951)(citing United States v. Hutto, 256 U.S. 524, 528, 41 S.Ct. 541, 65 L.Ed. 1073 (1921)), with United States v. Jobe, 101 F.3d 1046, 1063 (5th Cir.1996), cert. denied, Sutton v. United States, 522 U.S. ——, 118 S.Ct. 81, 139 L.Ed.2d 39 (1997); see also Pinkerton v. United States, 328 U.S. 640, 644, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128 (1940). As the bilateral theory was the exclusive theory at that time, Congress gave no further detailed recitation of its intent. Congress would have had to have been prescient to have intended Article 81, UCMJ, be based on a theory (unilateral) yet to be formulated. Thus, the congressional intent must have been that military conspiracy is only a crime under the bilateral theory. Congress has not amended Article 81, UCMJ, since its original enactment. There is no basis to conclude that the congressional intent has mutated over the years to alter the underlying theory of criminality.

The holding in Garcia, which jettisoned the "rule of consistency," did not infringe on the congressional prerogative to determine what actions are criminal. The elements of conspiracy were unchanged: A conspiratorial criminal agreement between an accused and another person was still required. The court merely cut off an appendage that was incidental and illogical. To the extent that this court in Tuck interpreted Garcia to eliminate the requirement that an accused must conspire with a bona fide co-conspirator, that decision was wrong and is overruled. Until Congress amends the statute or our superior court interprets it otherwise, we find that the military law of conspiracy requires an actual agreement to commit an offense under the

Code between an accused and another person, who share the requisite criminal intent. There is neither a true agreement nor a meeting of minds when an individual "conspires" to violate the law solely with a government pretender.

Two reasons have been given for making conspiratorial agreements illegal. See United States v. Feola, 420 U.S. 671, 693–94, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). One is to punish the special dangers inherent in group criminal activity. The second is to permit preventive steps against those who show a disposition to commit crime. The unilateral theory of conspiracy does not further the first purpose because when there is only a solo conspirator, there is perforce no "group" criminal activity. The increased danger is particularly nonexistent in a feigned conspiracy with a government agent who pretends agreement. There is no increased chance the criminal enterprise will succeed, no continuing criminal enterprise, and no greater difficulty of detection.

■ The unilateral theory also does not further the second purpose beyond that which already exists in other multiple actor inchoate offenses, i.e., solicitation and attempted conspiracy.[3] The punishable conduct in a unilateral conspiracy will almost always satisfy the elements of either solicitation or attempt. The government will still be able to thwart the activity and punish the individual who attempts agreement with an undercover police officer. Thus, it is in the instant case. Although appellant dodges the conspiracy bullet, attempted conspiracy still finds its mark.

This court notes with some concern the proliferation of conspiracy charges in recent years. As eloquently stated by Judge Learned Hand, conspiracy is the "darling of

---

2. A Bill to Unify, Consolidate, Revise, and Codify the Articles of War, the Articles for the Government of the Navy, and the Disciplinary Laws of the Coast Guard, and to Enact and Establish a Uniform Code of Military Justice: Hearings on H.R. 2498 Before the Subcomm. of the House Comm. on the Armed Services, 81st Cong. 1224 (1949)(Commentary)("This article is derived from title 18 U.S.C. section 371.").

3. The concern expressed by Judges Gierke and Cox in Anzalone, 43 M.J. at 326, regarding the vitality of an attempted conspiracy offense was resolved in United States v. Riddle, 44 M.J. 282 (1996).

the modern prosecutor's nursery."[4] Its attraction has not diminished with the passage of years. Justice Jackson sardonically noted that the history of conspiracy exemplified Justice Cardozo's phrase, "the 'tendency of a principle to expand itself to the limit of its logic,'" and further cautioned that "loose practice as to this offense constitutes a serious threat to fairness in our administration of justice." *Krulewitch v. United States*, 336 U.S. 440, 445–46, 69 S.Ct. 716, 93 L.Ed. 790 (1949)(concurring)(footnote omitted). Adoption of a "unilateral theory" of conspiracy would exacerbate this threat. Although we affirm a lesser included attempted conspiracy in this case, we do not do so to encourage any further expansion of prosecutorial overzealousness. Let us hearken back to basic principles of justice and proportionality.

The Court affirms only so much of the finding of guilty of Specification 1 of Charge II as finds that appellant did, at Fort Hood, Texas, on or about 8 October 1997, attempt to conspire with an undercover agent of the USACIDC Drug Suppression Team to commit an offense under the Uniform Code of Military Justice, to wit: the wrongful distribution of marijuana, and in order to effect the object of the conspiracy the said PV2 Audrey J. Valigura and the undercover agent did establish a future drug transaction date, in violation of Article 80, Uniform Code of Military Justice. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), the court affirms the sentence.

Judge ECKER concurs.

4. *Harrison v. United States*, 7 F.2d 259, 263 (2d Cir.1925).

**SQUIRES, Senior Judge (dissenting):**

Ten years ago, this court adopted the unilateral approach to conspiracy prosecutions in an opinion authored by Chief Judge Holdaway. *United States v. Tuck*, 28 M.J. 520 (A.C.M.R.1989). Unlike my brothers, I have discovered neither a proliferation of conspiracy convictions under the Uniform Code of Military Justice nor any threat to the fairness of our justice system during the past decade as a result. While *Tuck* may have *expanded United States v. Garcia*, 16 M.J. 52 (C.M.A.1983), beyond our superior court's intended holding, I find no reason to overrule *Tuck*. By attempting to plead guilty, the appellant and her defense counsel appear to have reached the same conclusion.

The majority reads *United States v. Anzalone*, 43 M.J. 322 (1995), and its four separate opinions differently than I. A failure to embrace the Model Penal Code's unilateral approach to conspiracy prosecution is not tantamount to an outright rejection of the theory, especially when the issue was not case dispositive. In short, *Anzalone* did not overrule *Tuck*, nor, in my judgment, weaken its holding.

This issue should be settled by our superior court. Since this court has, erroneously in my view, granted appellant relief, the only way our superior court can decide the issue is if the question reaches that court by the same method as *Anzalone* and *Garcia*, that being as a certified question.