IN THE CASE OF

UNITED STATES, Appellee

v.

David M. ROESELER, Specialist
U.S. Army, Appellant

No. 01-0077

Crim. App. No. 9900760

United States Court of Appeals for the Armed Forces

Argued March 28, 2001

Decided August 6, 2001

SULLIVAN, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and EFFRON and BAKER, JJ., joined.  GIERKE, J.,
filed an opinion concurring in the result.

<u>Counsel</u>

For Appellant:  <u>Captain Maanvi M. Patoir</u> (argued); <u>Captain Stephanie L. Haines</u>
(on brief).

For Appellee:  <u>Captain William J. Nelson</u> (argued); <u>Colonel David L. Hayden</u>,
<u>Lieutenant Colonel Edith M. Rob</u>, and <u>Captain Daniel G. Brookhart</u> (on
brief).

Military Judge:  Donna M. Wright

<u>THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION</u>.

Judge SULLIVAN delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of a military judge sitting alone at Hanau, Germany, on July 28, 1999. In accordance with his pleas, he was found guilty of the attempted murder of Private First Class (PFC) Toni Bell, in violation of Article 80, Uniform Code of Military Justice, 10 USC § 880, and conspiracy to murder her, in violation of Article 81, UCMJ, 10 USC § 881. In addition, in accordance with his pleas but with some modifications, he was found guilty of attempted conspiracy to murder Joyce and Jerry Bell, in violation of Article 80, UCMJ.

Appellant was then sentenced to a dishonorable discharge, confinement for 19 years, total forfeitures, and reduction to pay grade E-1. In accordance with a pretrial agreement, the convening authority on December 10, 1999, approved the adjudged sentence, except for confinement, which he reduced to 15 years. On September 27, 2000, the Army Court of Criminal Appeals affirmed the approved sentence in a memorandum opinion. (No. 9900760.)

On January 9, 2001, this Court specified review on the following question of law:

> WHETHER APPELLANT'S PLEA OF GUILTY TO
> ATTEMPTED CONSPIRACY (SPECIFICATION 2 OF
> CHARGE I) OR ANY OTHER OFFENSE WAS
> PROVIDENT IN VIEW OF THE FACT THAT THE
> ALLEGED VICTIMS OF THE OBJECTIVE OF THE
> CONSPIRACY DID NOT EXIST.

We hold that appellant's pleas of guilty to attempted conspiracy to murder the Bells were provident and affirm his conviction of this offense. See generally United States v. Riddle, 44 MJ 282, 285-86 (1996).

This was a guilty plea case, and the facts giving rise to appellant's conviction for attempted conspiracy to murder Joyce and Jerry Bell are not in dispute. In late December 1997 or early January 1998, appellant became acquainted with PFC Toni Bell, a female member of his platoon in Germany. R. at 36-37. PFC Bell was unmarried and had two children, of different fathers, who were staying with her parents in Iowa. R. at 38; Pros. Ex. 1, ¶ 8 (Stipulation of Fact) (hereinafter "P.E. 1"). However, PFC Bell told appellant that she had been married to one of the children's fathers and that he had died. R. at 38.

Around February 1998, PFC Bell confided in appellant that her in-laws ("Joyce and Jerry Bell"), who lived on a farm in Iowa, were trying to get custody of her children. R. at 35-36, 40; P.E. 1, ¶ 8, 10. PFC Bell was very upset about the prospect of losing her children and told appellant she "wished [the Bells] were dead" and would pay somebody to "take care of them." R. at 36, 39.

Appellant told PFC Bell that he knew of a soldier who could help and introduced her to Private (PVT) Armann, another member of their platoon. P.E. 1, ¶ 4, 9. PVT Armann had bragged to the platoon that he was an assassin and had killed several people before and during his enlistment. Id. Over the next few months,

appellant, PFC Bell, and PVT Armann discussed how they could get rid of the Bells so that PFC Bell could retain custody of her children.  Appellant and PVT Armann eventually agreed to kill the Bells for money. R. at 40; P.E. 1, ¶ 10.  Appellant obtained detailed information about Joyce and Jerry from PFC Bell, including their work schedules, directions to their farm in Iowa, and their physical descriptions, in preparation for the Bells' murder.  P.E. 1, ¶ 10.  Appellant and PVT Armann both submitted requests to take leave to the United States at the same time in March 1998 to carry out their plans.  Id., ¶ 11.

PVT Armann prepared a contract for PFC Bell, providing for the "termination" of Joyce and Jerry Bell in return for $55,000 ($5,000 of which was a deposit).  Id., ¶ 9 & Attach. 1-2.  The contract also contained a "reversion clause" whereby PFC Bell would herself be killed if she failed to comply with its various clauses.  Id., ¶ 9.  After commencing preparations for the killing, appellant and PVT Armann demanded that PFC Bell make the $5,000 deposit.  P.E. 1, ¶ 11.  When PFC Bell told them that her bank accounts were frozen as a result of a dispute with her in-laws, appellant insisted that she call her bank in his presence. Id.  While PFC Bell was on the line, appellant took the phone away from her and identified himself to the bank representative as an Army judge advocate serving as PFC Bell's lawyer.  Id. Despite these efforts, appellant failed to obtain the $5,000.

Unbeknownst to either appellant or PVT Armann, however, "Joyce and Jerry Bell" were fictitious names, and the detailed

information provided by PFC Bell concerning her purported "in-laws" was false. R. at 45. In fact, it was the natural father of one of her children who she had not married and his parents who had threatened to get custody of one of her children. P.E. 1, ¶ 8. Nevertheless, both appellant and PVT Armann believed that Joyce and Jerry Bell were real people living in Iowa, and maintained an intent to murder them.

As the date for the Bells' "termination" drew near, PVT Armann and appellant became frustrated that PFC Bell had not made the down payment. P.E. 1, ¶ 11-12. Realizing her lie had gone too far, PFC Bell told PVT Armann that the situation had resolved itself when her two children had joined her in Germany. R. at 47-48.

In return, PVT Armann decided to make good on his "reversion clause" and kill PFC Bell for backing out of the contract. P.E. 1, ¶ 12. He enlisted the assistance of appellant, whom PFC Bell still trusted and believed was her friend. Id. Appellant agreed to help PVT Armann plan PFC Bell's murder while maintaining his relationship with her so as not to arouse suspicion. Id., ¶ 13. Appellant persuaded PFC Bell to name him as her personal representative and guardian of her children in her will. Id. In accordance with this appointment, PFC Bell desired that appellant receive the proceeds of her $200,000 SGLI life insurance policy if anything should happen to her. R. at 48.

Appellant and PVT Armann agreed that PVT Armann would kill PFC Bell and appellant would share half of the life insurance

5

proceeds with PVT Armann.  Id.  After considering and rejecting a number of possible methods for the killing, including, inter alia, poisoning, a car bomb, and a "drive-by" shooting, PVT Armann and appellant agreed that PVT Armann would shoot PFC Bell with a sniper rifle as she stood guard duty.  R. at 49, 51-52; P.E. 1, ¶ 17-19.  PVT Armann, appellant, and an accomplice designed and built a sniper rifle, equipped with a scope and silencer.  R. at 52; P.E. 1, ¶ 18.  PVT Armann's roommate drove him to an area where he could shoot PFC Bell in her guard post undetected.  P.E. 1, ¶ 19.  PVT Armann shot and hit Bell.  Id.; R. at 55.  Fortunately, however, PFC Bell was wearing a kevlar vest with the collar turned up, which probably saved her life.  P.E. 1, ¶ 20.  Although the bullet pierced the collar and entered her neck (missing her spine by .5 cm), she recovered after undergoing surgery.  Id.

___ ___ ___

Appellant generally asserts that his guilty pleas to the charge of attempting to conspire with PFC Bell and PVT Armann to commit the premeditated murder of Joyce and Jerry Bell were improvident.  See Article 45(a), UCMJ, 10 USC § 845(a).  In particular, he asserts that the military judge should have told him that, because PFC Bell knew Joyce and Jerry Bell were fictitious persons, she did not legally share his intent to kill them as required for a conspiracy conviction.  See generally United States v. LaBossiere, 13 USCMA 337, 340, 32 CMR 337, 340 (1962).  In addition, he complains that the military judge did not explain the defense of impossibility to him, which may have

been applicable in his case because the Bells were fictitious persons.  See United States v. Clark, 19 USCMA 82, 41 CMR 82 (1969).  In sum, he concludes that these errors invalidated his guilty pleas because the military judge failed to fully explain "the law in relation to the facts" supporting his guilty pleas. See United States v. Care, 18 USCMA 535, 539, 40 CMR 247, 251 (1969).

Before addressing these contentions, we note that appellant pleaded guilty to attempting to conspire to murder Joyce and Jerry Bell.  In United States v. Riddle, 44 MJ 282 (1996), a majority of this Court clearly held that attempted conspiracy to commit a crime under the Uniform Code of Military Justice is a military offense under Article 80, UCMJ.  We said:

> Clearly, the language of this statute is broad and makes no distinction between a conspiracy or other inchoate offense and any other type of military offense as the lawful subject of an attempt offense.  See Note, Conspiracy:  Statutory Reform Since the Model Penal Code [hereafter Note], 75 Col.L.Rev. 1122, 1133 (1975); Developments in the Law-Criminal Conspiracy, 72 Harv. L.Rev. 920, 927 n.35 (1959); see generally 2 W. LaFave & A. Scott, Substantive Criminal Law § 6.4 at 72-73 (1986).  In addition, no other statute or case law from this Court precludes application of Article 80 to a conspiracy offense as prohibited in Article 81, UCMJ, 10 USC § 881.  See Robbins, Double Inchoate Crimes, [26 Harv. J. on Legis. 1,] 35 n.153, 76 [1989]; see also Note, supra, 75 Col.L.Rev. at 1134 n.61; cf. State v. Sanchez, 174 Ariz. 44, 846 P.2d 857, 861 (App. 1993).  Finally, conviction of an attempt under Article 80 is particularly appropriate where there is no general solicitation statute in the jurisdiction or a conspiracy statute embodying the

> unilateral theory of conspiracy. <u>See</u>
> Robbins, <u>Double Inchoate Crimes</u>, <u>supra</u> at
> 91. Accordingly, we reject appellant's
> argument that he was not found guilty of a
> crime under the Uniform Code of Military
> Justice.

<u>Id</u>. at 285 (footnote omitted).

I

Appellant first contends that the military judge had a duty to explain to him the differences between attempted conspiracy and conspiracy as a matter of military law. He notes that the record shows he believed he had an agreement with PFC Bell to kill Joyce and Jerry Bell, even though PFC Bell knew these persons were fictitious. R. at 45. He then challenges the military judge's failure to explain to him the various legal theories of conspiracy which would permit only a finding of attempted conspiracy in these circumstances. */ <u>See</u> <u>generally</u> <u>United States v. Valigura</u>, 54 MJ 187, 191 (2000).

We generally agree with appellant that guilty pleas in the military justice system must be both voluntary and intelligent (see <u>United States v. Roane</u>, 43 MJ 93, 99 (1995)), and the military judge is tasked with ensuring that the military accused

---

*/ It was stipulated at trial that the natural father of PFC Bell's son and his parents were seeking custody of that child and PFC Bell was upset with them. It was also stipulated that PFC Bell was not married to this man, and she falsely told appellant and PVT Armann that her married name was Bell and her in-laws, Jerry and Joyce Bell, were seeking custody of her children. We need not decide whether appellant could have been lawfully found guilty of conspiracy in these circumstances. <u>See United States v. Causor-Serrato</u>, 234 F.3d 384, 388 (8th Cir. 2000) (holding absence of knowledge by conspirator of specific controlled substance does not defeat charge of conspiracy to distribute methamphetamine).

understands the nature of the offenses to which guilty pleas are accepted.  See United States v. Smith, 44 MJ 387, 392 (1996).  We do not, however, agree that appellant was entitled to a law school lecture on the difference between bilateral and unilateral conspiracy.  E.g., United States v. Anzalone, 43 MJ 322 (1995).  Some leeway must be afforded the trial judge concerning the exercise of his judicial responsibility to explain a criminal offense to an accused servicemember.  See also United States v. Pretlow, 13 MJ 85, 89 n.6 (CMA 1982) (military judge must explain elements of offense but related principles of law may be explained in his discretion).

Here, appellant pleaded guilty to the offense of attempted conspiracy to murder the fictitiously named Bells.  This offense did not require agreement or a shared intent among the expected conspirators with respect to the object of the alleged conspiracy, i.e., the murder of the Bells.  See United States v. Valigura, supra.  The military judge clearly explained to appellant that it was appellant's belief or understanding that was critical to establish his guilt of this attempt offense.  See United States v. Riddle, supra at 286.

The record in this regard states:

> MJ:  Okay.  Now did you actually believe
> that you had an agreement between you and
> Armann and Bell to kill the Bells?
>
> ACC:  Yes, ma'am.
>
> MJ:  And ..and did you specifically intend
> to commit the premeditated murder of Joyce
> and Jerry Bell?

ACC:  Yes, ma'am.

MJ:  And do you believe the acts you've just described doing, calling the bank and getting this information from Toni Bell, do you believe the acts amounted to more than mere preparation?

ACC: Yes, I do, ma'am.

MJ:  And do you believe these acts would have affected an agreement between you, Bell and Armann -- well, would it have affected an agreement?  Would they have cemented an agreement in other words?

[No response by the ACC].

MJ:  Do you understand that?

ACC:  No, not really, ma'am.

MJ:  Okay.  Well, let me ask another question.  Do the Bells really -- do these people really exist?

ACC: No, ma'am.

MJ:  Okay.  And when did you find that out?

ACC: Not until after the shooting, ma'am.

MJ:  So that was in October?

ACC: Yes, ma'am.

MJ:  Okay.  So much later on you find out that these -- Joyce and Jerry Bell aren't her real in-laws and the situation was not as you believed it to be in the February, March, April time frame, right?

ACC:  Right, ma'am.

MJ:  Okay.  But if they had existed, do you believe -- if these people had existed and they really did live on a farm in Iowa, did you believe that you had an agreement with Bell and Armann to murder them?

ACC:  Yes, ma'am.

R. at 45 (emphasis added).

In addition, we note that the military judge effectively informed appellant of the difference between attempted conspiracy and conspiracy. Appellant had earlier pleaded guilty to conspiracy to murder PFC Bell, and the military judge fully explained the elements of that offense to him. R. at 26. In particular, she explained to him that conspiracy required a finding that "the minds of the parties reach a common understanding to accomplish the object of the conspiracy[.]" R. at 28. The military judge later incorporated her previous instructions on conspiracy into her discussion of the offense of attempted conspiracy with PFC Bell and PVT Armann to kill the Bells. R. at 34-35.

In explaining the offense of attempted conspiracy, the military judge said the following:

> Now finally look at Specification 1 of --
> - I'm sorry, Specification 2 of Charge I.
> Now there you are pleading guilty to an
> attempted conspiracy to commit the
> premeditated murder of Joyce and Jerry
> Bell, also in violation of Article 80.
> The elements of this offense are:
>
> that at or near Hanau, Germany,
> between on or about 1 February 1998 and 1
> April 1998, you spoke to a bank
> representative and inquired about an
> account on behalf of PFC Bell in order to
> obtain funds necessary to finance . . your
> plans to kill the Bells, and you and
> Private Armann both got information from
> PFC Bell concerning the address and daily
> schedules of Joyce and Jerry Bell;

> that <u>you did this with the specific intent</u> to commit the premeditated murder of Joyce and Jerry Bell;
>
> that these acts amounted to more than mere preparation;
>
> and, <u>that the acts apparently tended to affect an agreement between you, PFC Bell and Private Armann to commit the premeditated murder of Joyce and Jerry Bell except for a circumstance unknown to you, which was that Joyce and Jerry Bell were not real people and not really the in-laws of PFC Bell</u>.

R. at 34 (emphasis added).

These instructions, viewed together, were sufficient to inform appellant that conspiracy, unlike attempted conspiracy, required that the alleged conspirators actually share the same criminal intent or mental state.  See <u>United States v. Smith</u>, 44 MJ at 393 (holding model guilty plea instructions not required when record as whole unquestionably established appellant's guilt as a matter of fact and law).

                              II

   Appellant next contends that the military judge erred by failing to explain the defense of impossibility to him.  Citing two decisions of this Court, <u>United States v. Thomas</u>, 13 USCMA 278, 32 CMR 278 (1962), and <u>United States v. Clark</u>, 19 USCMA 82, 41 CMR 82 (1969), he argues that impossibility is a defense to an attempt charge under Article 80, UCMJ.  Accordingly, he contends that the military judge should have explained this defense to him because the objects of his alleged attempted conspiracy to murder were fictitious persons.  See <u>United States v. Biscoe</u>, 47 MJ 398

(1998) (holding that possible defense to charges must be explained to an accused by judge before accepting guilty pleas).

The language of Article 80, UCMJ, does not support appellant's argument that the impossibility of the crime attempted is a valid defense to a charge of attempt.  See para. 4c(3), Part IV, Manual for Courts-Martial, United States (1998 ed.).  Article 80, UCMJ, states:

> (a)  An act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.

(Emphasis added).

The language of Article 81, UCMJ, likewise does not support an argument that the impossibility of the crime conspired upon is a valid defense to a charge of conspiracy.  See para. 5c(7), Part IV, Manual, supra.  Article 81, UCMJ, states:

> Any person subject to this chapter who conspires with any other person to commit an offense under this chapter shall, if one or more of the conspirators does an act to effect the object of the conspiracy, be punished as a court-martial may direct.

(Emphasis added).

Since the impossibility of the fictitious Bells being murdered was not a defense to either charge, i.e., attempt or conspiracy, we conclude as well that it was not a defense to the charge of

United States v. Roeseler, 01-0077/AR

attempted conspiracy.  See United States v. Riddle, 44 MJ at 286-87.

Our conclusion is well supported by our case law.  Contrary to appellant's suggestion, United States v. Thomas holds that impossibility of the crime attempted or conspired is not a defense to a charge of attempt or conspiracy under military law. 13 USCMA at 286-87, 290, 32 CMR at 286-87, 290.  Moreover, in United States v. Riddle, 44 MJ at 286, we likewise said:

> Article 80 prohibits attempts to commit "an offense under" the Uniform Code of Military Justice.  On its face, it provides for no defense that the crime attempted could not factually or legally be committed by an accused under the circumstances of his case.  This Court has expressly rejected these defenses on several occasions.  See United States v. Thomas, 13 USCMA at 286, 32 CMR at 286; United States v. Dominguez, 7 USCMA 485, 22 CMR 275 (1957); cf. Grill v. State, 337 Md. 91, 651 A.2d 856 (1995).  In a more recent case, a majority of this Court found it unnecessary to revisit this question.  See United States v. Allen, 27 MJ 234, 239 n.4 (CMA 1988).  Our general rule is that an accused should be treated in accordance with the facts as he or she supposed them to be.  United States v. Thomas, supra.  See para. 4c(3), Part IV, Manual for Courts-Martial, United States, 1984:  "A person who purposely engages in conduct which would constitute an offense if the attendant circumstances were as that person believed them to be is guilty of an attempt."  See also United States v. Quijada, 588 F.2d 1253 (9th Cir. 1978).

Finally, more recently in United States v. Valigura, 54 MJ at 189, Senior Judge Everett, speaking for this Court, reiterated our view:  "[I]n military justice, impossibility - whether of law

or fact – is no defense in a prosecution for conspiracy or attempt."  See United States v. Thomas, 13 USCMA at 291-92, 32 CMR at 291-92 (affirming convictions for attempted rape of a dead person and conspiracy to rape a dead person); see also United States v. Allen, 27 MJ 234, 239 (CMA 1988).

United States v. Clark, the case so heavily relied on by appellant for a contrary proposition, is neither binding nor applicable authority.  It was a one-judge opinion, where the two other judges on this Court concurred in the result.  19 USCMA at 84, 41 CMR at 84.  Moreover, United States v. Clark was a case based on a uniquely worded Federal statute, 49 USC § 1472(i), which specifically required as a matter of law that even an attempt to commit air piracy be committed while the plane in question was in the air.  The attempt itself, not just the object of the attempt, was legally impossible under the language of that federal statute.  Id. at 83, 41 CMR at 83.  In appellant's case, there was no statutory provision which provided an impossibility defense for either an attempt to conspire or a conspiracy to murder.  In view of these circumstances, we must reject appellant's second claim of instructional error.

The decision of the United States Army Court of Criminal Appeals is affirmed.

GIERKE, Judge (concurring in the result):

For the reasons set out in my separate opinion in United States v. Anzalone, 43 MJ 322, 326 (1995), I do not believe that there is a crime of attempted conspiracy. Thus, I would hold that appellant's plea of guilty to attempted conspiracy was improvident.

In Anzalone, I concluded that the allegation of attempted conspiracy was sufficient to allege a solicitation. In this case, the record is unclear whether PFC Bell solicited appellant to kill the non-existent in-laws or appellant solicited PFC Bell. The record clearly reflects, however, that appellant solicited PVT Armann, the "assassin," to carry out the actual killing. Since the specification alleges that appellant conspired with both PFC Bell and PVT Armann, I believe that the specification is sufficient to allege that appellant solicited PVT Armann to murder the fictitious in-laws, in violation of Article 134, UCMJ, 10 USC § 934. Accordingly, I would affirm the conviction of attempted conspiracy to commit premeditated murder as a mislabeled solicitation to commit premeditated murder.

While there is a significant difference between the maximum imposable period of confinement for attempted conspiracy to commit premeditated murder (life imprisonment) and solicitation to commit premeditated murder (confinement for 5 years), this circumstance alone does not require a remand for sentence reassessment. Appellant's conviction for the other two

offenses of attempted murder and conspiracy to commit murder each has a maximum sentence of life imprisonment.  <u>See</u> paras. 4e and 43e(1), Part IV, Manual for Courts-Martial, United States (2000 ed.).  Moreover, it was the victim of the attempted murder and conspiracy to commit murder offenses who was actually shot, and of course, there was no physical harm to the fictitious in-laws, the putative victims of the solicitation offense.  In this case, it is clear that the military judge sentenced appellant for his actions and not the name of his offenses.  I am satisfied beyond a reasonable doubt that the mislabeled solicitation to commit premeditated murder had no impact on the sentencing by the military judge in this case, and the error was harmless.  <u>See</u> <u>Loving v. Hart</u>, 47 MJ 438, 447 (1998).