# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39052**

————————————

### UNITED STATES
*Appellee*

**v.**

### Steven J. BAILEY
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 September 2017

————————————

*Military Judge:* Mark W. Milam.

*Approved sentence:* Dishonorable discharge, confinement for 30 years, and reduction to E-1. Sentence adjudged 7 January 2016 by GCM convened at Tinker Air Force Base, Oklahoma.

*For Appellant:* Major Annie W. Morgan, USAF; Captain Patricia Encarnación Miranda, USAF.

*For Appellee:* Major Mary Ellen Payne, USAF; Major Andre L. Pennington, USAF; Gerald R. Bruce, Esquire.

Before DREW, MAYBERRY, and DENNIS, *Appellate Military Judges.*

Senior Judge MAYBERRY delivered the opinion of the court, in which Chief Judge DREW and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MAYBERRY, Senior Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, consistent with his pleas, of three specifications of attempted premeditated murder; one specification of attempted conspiracy to commit

murder; one specification of illegal possession of a firearm; and three specifications of soliciting others to commit murder in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934. The court sentenced Appellant to a dishonorable discharge, confinement for 50 years, and reduction to the grade of E-1. Pursuant to a pretrial agreement (PTA), the convening authority only approved so much of the sentence as included a dishonorable discharge, confinement for 30 years, and reduction to the grade of E–1. Appellant was credited with 283 days of pretrial confinement credit.

On appeal, Appellant asserts: (1) The Government was preempted from charging the three specifications of soliciting others to commit murder; (2) The specification of attempted conspiracy to commit murder failed to state an offense; and (3) Appellant's 30-year sentence was inappropriate, considering the disparity in his co-actor's 12-year sentence. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant was estranged from MC, his former girlfriend and the mother of his daughter, beginning in early 2013. From late 2013 to mid-2015, Appellant engaged in a pattern of conduct designed to result in MC's death. Appellant engaged in three separate efforts to kill MC in coordination with three other individuals whom he solicited on multiple occasions to commit the murder.

One of those individuals was Staff Sergeant (SSgt) EL. In late 2013, Appellant asked SSgt EL to murder MC for $20,000. Although Appellant did not dictate the specific means by which the murder would occur, Appellant was explicit that his daughter not be present. In January of 2014, acting on information provided by Appellant, SSgt EL set MC's house on fire while she and her two children[1] were inside. Awakening to the smell of smoke, the three were able to escape.

In March 2015, Appellant solicited a second person, SSgt EM, to ask his brother, who had served time in jail, to identify a hitman he could hire to murder MC. Unbeknownst to Appellant, SSgt EM contacted the Air Force Office of Special Investigations (AFOSI) about this request and became a confidential informant. SSgt EM put Appellant in touch with the "hitman" who was in fact Special Agent (SA) MM. After a series of discussions between Appellant and SSgt EM, and one conversation between Appellant and SA MM, Appellant provided a firearm, homemade suppressor with a threaded adapter, laser aiming device known as a PEQ-15, body armor, ammunition, and photographs and

---

[1] In addition to MC and Appellant's daughter, MC had a 12-year-old son from a prior relationship.

other personal information about MC via a "bag drop" to the "hitman." Appellant was apprehended upon returning to the base after making the drop.

Appellant had a backup plan in the event the hitman did not carry out the murder as planned. Again, Appellant solicited SSgt EL to shoot MC in a parking lot adjacent to a downtown Oklahoma City courthouse on a date when Appellant and MC had a scheduled court appearance. This plan assured that their daughter would not be present and could occur before SSgt EL deployed. In addition to the information as to the time and date of the court hearing, Appellant provided SSgt EL with information as to where MC parked, gave him a knife and offered to pay him for the murder. Appellant provided the details of this plan to AFOSI after he was apprehended in connection with the bag drop for the hitman.

## II. DISCUSSION

### A. Preemption

Appellant argues that the Additional Charge and its three specifications—alleging solicitation to commit murder under clauses 1 and 2 of Article 134, UCMJ—were preempted by three of the Charge I specifications—alleging attempted premeditated murder under Article 80. We review questions of preemption de novo. *United States v. Benitez*, 65 M.J. 827, 828 (A.F. Ct. Crim. App. 2007). The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132. *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 60.c.(5)(a).

Our superior court has long placed an additional requirement on the application of the preemption doctrine that has greatly restricted its applicability:

> [S]imply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine. In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way.

*United States v. Anderson*, 68 M.J. 378, 386-387 (C.A.A.F. 2010) (citing *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979)) (alteration in original). The preemption doctrine "applies only when (1) Congress intended to limit prosecution for . . . a particular area of misconduct to offenses defined in specific articles of the Code, and (2) the offense charged is composed of a residuum of elements of a specific offense." *United States v. Curry*, 35 M.J. 359, 360-361 (C.M.A. 1992) (quotation marks and citations omitted).

The Government asserts Appellant waived the right to raise this issue as a result of the PTA requirement to waive all waivable motions. We disagree. This

court has ruled that preemption relates to a question of subject matter jurisdiction, and is thereby not waived by Appellant's guilty plea. *United States v. Jones*, 66 M.J. 704, 706 (A.F. Ct. Crim. App. 2008) (citing *United States v. Robbins*, 52 M.J. 159, 160 (C.A.A.F. 1999)).[2]

The Government acknowledges *Jones* and *Robbins*, but asks this court to revisit *Jones* in light of a recent Army Court of Criminal Appeals opinion, *United States v. Guardado*, 75 M.J. 889 (Army Ct. Crim. App. 2016), *rev. granted*, 2017 CAAF LEXIS 273 (C.A.A.F. 3 Mar. 2017), holding that the preemption doctrine is not jurisdictional—and thus can be waived—when, as here, it concerns offenses charged under clauses 1 and 2 rather than clause 3 of Article 134. In *Guardado*, our sister court distinguishes *Robbins* as having dealt with an Ohio law that had been assimilated into federal law by the Assimilative Crimes Act (ACA), 18 U.S.C. § 33, and charged as a clause 3 violation of Article 134, UCMJ. *Id.* at 900. *Guardado* limits the "jurisdictional" issue in *Robbins* to the improper assimilation of an offense under the ACA. *Id.* Thus, *Guardado* holds that where conduct is prohibited by clause 1 or 2 of Article 134, Article 134 itself conveys subject matter jurisdiction over that conduct, and the preemption doctrine is not a matter of subject matter jurisdiction outside the ACA. *Id.* at 901.

In *Jones*, a non-ACA case, this court acknowledged the ACA (clause 3) distinction now raised by *Guardado,* but nevertheless stated that although "*Robbins* dealt with an assimilated charge under Article 134, UCMJ, [the United States Court of Appeals for the Armed Forces (CAAF)] still found that preemption relates to a question of subject-matter jurisdiction of the trial court and thus cannot be waived by either a plea or failure to object. That decision controls the issue in this case . . . ." *Jones*, 66 M.J. at 706.

While we acknowledge our sister court's interpretation of *Robbins*, we adhere to the principle of *stare decisis* and our own precedent in *Jones* interpreting *Robbins* to stand for the general principle that waiver of preemption is not valid.[3] We thus hold that preemption was not waived.

---

[2] "RCM 905(e) provides that lack of jurisdiction or failure to state an offense are not waived by failure to raise the issue at trial. In this case, the issue relates to subject-matter jurisdiction. If the offense was improperly assimilated, it was not cognizable by a court-martial. Thus, we hold that the preemption issue was not waived by the guilty plea or appellant's failure to raise it at trial." *Robbins*, 52 M.J. at 160.

[3] This court further solidified its perspective on this matter in more recent unpublished opinions such as *United States v. Hill:*

We turn now to the substantive issue of whether preemption applies in this case. Appellant asserts that the three Charge I specifications and the three Additional Charge specifications "cover the exact same conduct." In making this argument, he appears to conflate the doctrines of multiplicity and unreasonable multiplication of charges (UMC) with preemption—both of which were expressly waived pursuant to his guilty plea. Irrespective, the claim has no merit. In accordance with *Curry* and its progeny, the question before this court is whether solicitation to commit premeditated murder is composed of a residuum of elements of attempted premeditated murder and whether Congress intended to limit the prosecution for solicitation to commit murder to an area of the UCMJ other than Article 134. *Curry*, 35 M.J. at 360–61.

Preemption is not applicable here because the three "wrongful solicitation" Article 134 specifications in the Additional Charge are not Article 80 offenses, nor covered anywhere else in Articles 80–132, and thus cannot be preempted by the Article 80 specifications in Charge I. Solicitation under Article 134 and attempt under Article 80 are two distinct offenses. The elements of "soliciting another to commit an offense" under Article 134, UCMJ, are: (1) that the accused solicited or advised a certain person or persons to commit a certain offense under the code other than one of the four offenses named in Article 82;[4] (2) that the accused did so with the intent that the offense actually be committed; and (3) that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. *MCM*, pt. IV, ¶ 105.b. On the other hand, the elements of Article 80, UCMJ, require: (1) that the accused did a certain overt act; (2) that the act was done with the specific intent to commit a

> A claim of preemption therefore presents a question of subject-matter jurisdiction of the trial court and thus cannot be waived by either a plea or failure to object. *See United States v. Jones*, 66 M.J. 704, 706 (A.F. Ct. Crim. App. 2008). Although *Jones* related only to an unconditional guilty plea, and not an agreement to waive all waivable motions, we conclude the result is the same. A provision in a pretrial agreement purporting to waive a challenge on the basis of lack of subject matter jurisdiction over the offense is unenforceable. Rule for Courts-Martial (R.C.M.) 705(c)(1)(B).

*United States v. Hill,* No. ACM 38848, 2016 CCA LEXIS 291, at *4 (A.F. Ct. Crim. App. 9 May 2016) (unpub. op.); *see also*, *United States v. Costianes*, No. ACM 38868, 2016 CCA LEXIS 391, at *3 (A.F. Ct. Crim. App. 30 Jun. 2016) (unpub. op.) ("Appellant's guilty plea neither forfeits nor waives the issue of preemption. *See United States v. Robbins*, 52 M.J. 159, 160 (C.A.A.F. 1999).").

[4] Solicitation of a short list of enumerated offenses is prosecuted under Article 82: desertion, mutiny, sedition, and misbehavior before the enemy. Solicitation to commit any other crime is typically prosecuted under Article 134.

certain offense under the code; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense. *MCM*, pt. IV, ¶ 4.b. A comparison of the Article 80 and 134 elements indicate that neither offense merely contains a residuum of elements of the other.

Further, there is no evidence that Congress intended to limit the prosecution for soliciting another to commit premeditated murder to an area of the UCMJ other than Article 134. To the contrary, our superior court has ruled that "[s]olicitation to commit a crime is usually prosecuted under Article 134, and [CAAF has] approved the President's explanation of the elements of this offense as found in paragraph 105b, Part IV, Manual for Courts-Martial, United States (1995 ed.)." *United States v. Williams*, 52 M.J. 218, 220 (C.A.A.F. 2000) (internal quotation marks omitted). The solicitation specifications are indeed centered upon the same series of events as the attempt specifications, but even if an offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article, the preemption doctrine is not automatically triggered. *Anderson,* 68 M.J. at 386–387. The decisive factor here is that the specifications are not composed of a residuum of elements of another specific offense. *See Curry*, 35 M.J. at 361. Solicitation and attempt are two separate crimes. One can solicit without attempting and attempt without soliciting. As it happens, Appellant did both.

## B. Failure to State an Offense

Appellant asserts that attempted conspiracy to commit premeditated murder fails to state an offense under the UCMJ. Appellant relies on several Court of Military Appeals (CMA) and CAAF cases spanning from 1962 to 2000 that deal with whether "attempted conspiracy" may be considered an offense. Appellant "recognizes the adverse precedent in these opinions, but also notes the Court was consistently divided." It is true, our superior court has visited and revisited the issue, which has resulted in several passionate dissents. However, ultimately, the last word was issued in *United States v. Roeseler*, 55 M.J. 286, 288 (C.A.A.F. 2001) where the majority clearly held that attempted conspiracy to commit a crime under the UCMJ is a military offense under Article 80, UCMJ. We adhere to this precedent and reject Appellant's claim.

## C. Sentence Appropriateness

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c).

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Though we have great discretion to determine whether a sentence is appropriate, we have no power to "grant mercy." *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In making a sentence appropriateness determination, we are required to examine sentences in closely related cases and permitted, but not required, to do so in other cases. *Anderson,* 67 M.J. at 705. Sentence comparison is "only one of many" aspects of sentence appropriateness. *Anderson*, 67 M.J. at 708 (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)). When evaluating sentence appropriateness in a case alleging sentence disparity, we look to three questions of law: (1) whether the cases are "closely related" (e.g., co-actors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared); (2) whether the cases resulted in "highly disparate" sentences; and (3) if the requested relief is not granted in a closely related case involving a highly disparate sentence, whether there is a rational basis for the differences between or among the cases. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). We "are required to engage in sentence comparison only 'in rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)).

The Government concedes that Appellant's case and that of SSgt EL are closely related. We agree to the extent that Appellant and SSgt EL were both convicted of offenses stemming from their common crime to commit premeditated murder of MC, but the charges and ultimate convictions are dissimilar as will be discussed below. Similarly, the Government concedes the sentences are different. We agree the sentences are highly disparate, considering Appellant's 50-year adjudged sentence exceeds SSgt EL's 12-year adjudged sentence by more than a factor of four.

Applying the third *Lacy* factor, we find there was a "rational basis" for this disparity. SSgt EL was convicted of two specifications of conspiracy to commit premeditated murder of MC, one specification of aggravated arson for setting MC's house on fire, one specification of reckless endangerment (involving MC's two children who were in the home at the time of the fire), and one specification each of use and distribution of anabolic steroids. SSgt EL was acquitted of attempted premeditated murder. Appellant was convicted of three specifications of attempted premeditated murder, one specification of attempted conspiracy

to commit premeditated murder that did not involve SSgt EL, three specifications of solicitation to commit premeditated murder (only one of which involved SSgt EL), and knowingly possessing a firearm silencer in violation of Federal law. While it is true that SSgt EL was the one who actually set MC's house on fire, Appellant was the mastermind behind that offense and a number of other criminal enterprises designed to kill the mother of his child. We conclude that there is unquestionably a rational as well as a compelling basis for the disparity between the sentences of Appellant and SSgt EL.

Having determined that there is a rational and compelling basis for the disparity between Appellant's sentence and that of SSgt EL, we must now analyze whether Appellant's sentence is appropriate as required by Article 66, UCMJ. When deciding sentence appropriateness, we "may consider both adjudged and approved sentences." *United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010). Here, Appellant's guilty plea and his negotiated pretrial agreement reduced his sentence from 50 to 30 years. Appellant's multi-year obsession to commit premeditated murder of the mother of his child, to include his overt acceptance of the collateral death of her son as a result of any attempts on his mother's life, shocks the conscience. We have given individualized consideration to this Appellant, the nature and seriousness of his offenses, his record of service, and other relevant matters contained in the record of trial and find the approved sentence to be appropriate.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.[5]

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

---

[5] We note that the court-martial order (CMO) indicates that findings were announced on 7 January 2016. Findings were announced on 6 January 2016, and sentencing was announced on 7 January 2016. Typically the CMO refers to the date sentencing is announced. We direct that a corrected CMO be prepared.