*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

**UNITED STATES**
Appellant

**v.**

**Randy L. SIMPSON Jr., Sergeant**
United States Army, Appellee

**No. 17-0329**
Crim. App. No. 20140126

Argued November 29, 2017—March 19, 2018

Military Judges: Jeffery Lippert and David L. Conn

For Appellant: *Captain Marc B. Sawyer* (argued); *Colonel Mark H. Sydenham, Lieutenant Colonel A. G. Courie III, Major Michael E. Korte, Captain Tara O'Brien Goble,* and *Captain Austin L. Fenwick* (on brief).

For Appellee: *Captain Joshua B. Fix* (argued); *Colonel Mary J. Bradley, Lieutenant Colonel Christopher D. Carrier,* and *Captain Ryan T. Yoder* (on brief); *Captain Steven J. Dray.*

Judge RYAN delivered the opinion of the Court, in which Chief Judge STUCKY, Judges OHLSON and SPARKS, and Senior Judge EFFRON, joined.

———————————

Judge RYAN delivered the opinion of the Court.

Appellee was convicted, pursuant to his pleas, of one specification of larceny and one specification of conspiracy to commit larceny of property owned by Credit First National Association (CFNA) in violation of Articles 81 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921 (2012). Appellee was sentenced to two months of confinement, a reduction to the grade of E-4, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

The United States Army Court of Criminal Appeals (ACCA) summarily affirmed the findings and sentence. *United States v. Simpson* (*Simpson I*), No. ARMY 20140126 (A. Ct. Crim. App. Dec. 18, 2015) (per curiam) (unpublished). We granted Appellee's petition on the following issue:

WHETHER THE MILITARY JUDGE ABUSED
HIS DISCRETION IN ACCEPTING THE GUILTY
PLEA TO THE SPECIFICATION OF
ADDITIONAL CHARGE I BY FAILING TO
ESTABLISH A SUFFICIENT FACTUAL BASIS
THAT CFNA WAS THE LARCENY VICTIM.

*United States v. Simpson* (*Simpson II*), 75 M.J. 370
(C.A.A.F. June 10, 2016) (summary disposition). We vacated
the decision and remanded for the ACCA to consider the
granted issue in light of *United States v. Williams*, 75 M.J.
129 (C.A.A.F. 2016). 75 M.J. at 370. On remand, the ACCA
set aside Appellee's guilty plea and sentence, finding that
there was a substantial basis in law and fact to question the
plea because CFNA was not the correct object of the larceny
under *Williams*. *United States v. Simpson* (*Simpson III*), No.
ARMY 20140126, 2017 CCA LEXIS 132, at *9−10, 2017 WL
825286, at *4 (A. Ct. Crim. App. Mar. 1, 2017) (un-
published).

The Judge Advocate General of the Army (TJAG) then
certified the following issue pursuant to Article 67(a)(2),
UCMJ, 10 U.S.C. § 867(a)(2) (2012):

WHETHER THE ARMY COURT OF CRIMINAL
APPEALS ERRED BY FINDING A
SUBSTANTIAL BASIS IN LAW AND FACT TO
QUESTION APPELLANT'S PLEA IN LIGHT OF
THE SUPREME COURT DECISION IN *UNITED
STATES v. SHAW*, 137 S. CT. 462 (2016), AND
THE COURT OF APPEALS FOR THE ARMED
FORCES DECISION IN *UNITED STATES v.
CIMBALL[]SHARPTON*, 73 M.J. 299 (C.A.A.F.
2014).

We answer the certified issue in the negative to the ex-
tent that there was a substantial basis in law and fact to
question Appellee's plea to the larceny specification in light
of *Williams*, which clarified *United States v. Cimball Sharp-
ton*, 73 M.J. 299 (C.A.A.F. 2014), *United States v. Lubasky*,
68 M.J. 260 (C.A.A.F. 2010), and the stipulation of fact in
this case.[1] However, Appellee's guilty plea to the conspiracy

---

[1] Nonetheless, for reasons explained *infra* at p. __ (9–10),
based on the stipulation of fact and the military judge's providence
inquiry, we approve a finding of guilty to the lesser included of-
fense of attempted larceny under Article 80, UCMJ, 10 U.S.C.

to commit larceny specification was not affected by this error, and the ACCA erred when it found a substantial basis to question Appellee's plea to this offense.

**I.**

The underlying facts of this case arise from a long-standing and complex scheme involving numerous transfers paid by J. P. Morgan Chase (J. P. Morgan) to various creditors of Appellee as reflected on CFNA's "zero-balance" account. However, we need not delve into the details of this scheme because our inquiry is focused on the object of the larceny.

Appellee and the Government entered into a pretrial agreement (PTA), in which Appellee agreed, inter alia, to enter a plea of guilty to a single specification of larceny (on divers occasions) and a single specification of conspiracy to commit larceny. As part of the PTA, Appellee and the Government entered into a stipulation of fact.[2]

The parties stipulated to the following elements of larceny as applied to Appellee's case:

> i. That between 29 September 2009 and 16 August 2010, on divers occasions, at or near Joint Base Lewis-McChord, Washington, [Appellee] wrongfully obtained certain property, that is, money, *from the possession* [*of*] *Credit First National Association*, by using their account information to transfer money from their account into accounts that [Appellee] owned or was responsible for;
>
> ii. *That the property belonged to Credit First National Association*;
>
> iii. That the property was of a value of greater than $500.00; and
>
> iv. That [Appellee] obtained the property with the intent to permanently deprive Credit First National Association of the use and benefit of the proper-

---

§ 880 (2012). *See Manual for Courts-Martial, United States* pt. IV, para. 46.d.(1)(b) (2012 ed.) (*MCM*); Article 59(b), UCMJ, 10 U.S.C. § 859(b) (2012).

[2] Such a stipulation, if accepted, "is binding on the court-martial and may not be contradicted by the parties thereto." Rule for Courts-Martial (R.C.M.) 811(e).

ty, in that [Appellee] obtained the money for [his] own personal use and enjoyment by paying [his] bills and purchasing things [he] wanted.

Emphasis added. *MCM* pt. IV, para. 46.b.(1).

In the stipulation, the parties acknowledged that the CFNA account was not a conventional bank account, but rather a "zero-balance" account, which functioned like an ordinary credit card. The CFNA account contained no actual funds, but rather reflected amounts J. P. Morgan paid to third-parties on CFNA's behalf. At the end of each business day, CFNA would "zero[] out" the account by transferring funds to J. P. Morgan to cover the expenditures made to Appellee's creditors by J. P. Morgan—returning the account to a balance of zero. As the Government conceded at argument, Appellee obtained nothing from CFNA.

In regard to the conspiracy specification, the parties stipulated that Appellee entered into an agreement with Sergeant (E-5) Richard Ramos where Appellee would arrange for Sgt. Ramos to receive the CFNA bank account information and Sgt. Ramos could then, in turn, pay off his personal debts by charging them to the CFNA account.

Based on the stipulation of fact and Appellee's testimony at the providence inquiry, the military judge determined that Appellee's plea was provident, accepted the guilty plea, and entered findings of guilty.

## II.

We review a military judge's acceptance of a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). In the event that an accused sets up a matter inconsistent with their plea of guilty, the military judge must resolve the inconsistency or reject the plea. *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014)); Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2012). "A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea—an area in which we afford significant deference." *United States v. Nance*, 67 M.J. 362, 365 (C.A.A.F. 2009) (citation omitted) (internal quotation marks omitted); *United*

*States v. Care*, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969); R.C.M. 910(e). A ruling based on an erroneous view of the law is also an abuse of discretion. *United States v. Passut*, 73 M.J. 27 (C.A.A.F. 2014) (citation omitted). This Court will not set aside an accused's guilty plea on appeal unless there is a substantial basis in law or fact for questioning the plea. *Inabinette*, 66 M.J. at 322; *see also United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

## A.

Article 121, UCMJ, proscribes the wrongful taking, obtaining, or withholding, from the possession of the owner or of any other person, money or an article of value of any kind with intent to permanently deprive. The government must allege that the accused " 'wrongfully obtain[ed] money or goods … *from* a person or entity with a superior possessory interest.' " *Williams*, 75 M.J. at 132 (quoting *Lubasky*, 68 M.J. at 263); *MCM,* Analysis of Punitive Articles app. 23 at A23–17 (2012 ed.).

When an accused engages in a wrongful "credit, debit, or electronic transaction," this usually constitutes either "a larceny of those goods from the entity from the merchant offering [the goods]" or "from the entity presenting the money." *MCM* pt. IV, para. 46.c.(1)(i)(vi); *Williams*, 75 M.J. at 132; *Cimball Sharpton*, 73 M.J. at 301; *see also United States v. Endsley*, 74 M.J. 216, 216 (C.A.A.F. 2015) (summary disposition); *United States v. Gaskill*, 73 M.J. 207, 207 (C.A.A.F. 2014) (summary disposition). In *Lubasky*, *Cimball Sharpton*, and recently again in *Williams*, we repeated that the general rule in such a case is that the money or goods are wrongfully obtained from the merchant or bank.[3] *Burton*, 196 U.S. at

---

[3] In *Shaw v. United States*, the Supreme Court reiterated that a bank ordinarily owns the funds in its accounts. 137 S. Ct. 462, 466 (2016). Although, *Shaw,* in dicta, suggests that the customer may retain a possessory interest in money contained in a bank account, it did not purport to overrule *Burton v. United States*, 196 U.S. 283, 302 (1905), which clearly held the bank owns the deposits in an account and is not an agent of the depositor unless there were "stipulations to the contrary." *Id.* at 301 (citation omitted) (internal quotation marks omitted). There are no such stipulations extant in the record here, and *Shaw* is not otherwise relevant for purposes of deciding this case. The federal bank fraud statute it

302; *see also* Benjamin M. Owens-Filice, *"Where's the Money Lebowski?" — Charging Credit and Debit Card Larcenies Under Article 121, UCMJ*, Army Law., Nov. 2014, at 9 ("[T]he account holder has neither title to nor possession of the money in his or her debit account … [therefore] the account holder cannot be the 'owner' in a credit or debit card larceny case.").

Therefore, in *Lubasky*, we agreed that claims that the appellant obtained anything from Mrs. Shirley were legally insufficient with respect to the credit card transactions, because the appellant obtained the goods at issue from the merchant that provided them and the funds from the bank that issued the credit card. 68 M.J. at 263−64.

*Cimball Sharpton* was an unusual case involving an agreement between the Air Force and the bank issuing a government credit card and an agency relationship between the appellant and the Air Force. 73 M.J. at 299−302. We concluded that an alternative charging theory was appropriate in this case, and, due to the agency relationship, it was legally sufficient to allege that the appellant had obtained the goods and money from the Air Force. *Id.; Williams*, 75 M.J. at 133−34 (citing *Cimball Sharpton*, 73 M.J. at 299−302).

Unfortunately, we used language describing the Air Force as a "victim" and as the entity who "suffered the financial loss," rather than explaining how goods and funds were obtained from it. *Cimball Sharpton*, 73 M.J. at 301−02. We clarified our holding in *Williams* by explaining that under Article 121, UCMJ, the government should generally charge as the *object* of the larceny, the person or entity from whom the accused obtained the goods or money at issue, rather than any person who suffered a loss or consequence as a result of the defendant's actions. *Williams*, 75 M.J. at 132−34 (citing *Cimball Sharpton*, 73 M.J. at 301−02).

In *Williams*, the appellant unlawfully obtained funds from two checking accounts held at a bank. As a matter of

---

analyzed, 18 U.S.C. § 1344, unlike Article 121, UCMJ, does not require pleading *from whom* the property is obtained. *Compare* 18 U.S.C. § 1344(1), *with* Article 121, UCMJ.

law the money was owned by the bank, *id*. at 134, the appellant obtained nothing from the account holders, and we applied the general rule, and held that charges were legally insufficient because the banks should have been listed as the object of the larcenies in the specification. *Id*. We declined to apply an alternate charging theory because "no agency relationships, no joint accounts, and no contracts" existed. *Id*.

The stipulation of fact in this case does not reflect the requirements of our case law. The Government, in this case, entered into a stipulation of fact that set up a matter inconsistent with the larceny specification alleging that the money stolen by Appellee belonged to CFNA. The stipulation clearly demonstrates that Appellee obtained the money from J. P. Morgan. Appellee did admit he stole funds that belonged to CFNA. However, this admission is clearly erroneous as a matter of law. *Simpson III*, 2017 CCA LEXIS 132 at *9−10, 2017 WL 825286 at *4. Based on the stipulation, CFNA had an account with J. P. Morgan, the bank. As is true in the *usual case* involving a credit larceny, the bank was the proper object, not the account holder. *Williams*, 75 M.J. at 134. Further, as the stipulation of fact reflects, J. P. Morgan was the only entity that possessed funds at the time of the fraudulent transactions, and as described in the stipulation of fact, there were no funds in the CFNA account itself when Appellee made claims against it. As Government counsel conceded at argument, Appellee obtained *nothing* from CFNA, and as a matter of law CFNA, therefore, could not be the object of the larceny.

Nor does the stipulation of fact support an alternate charging theory. Like in *Williams*, "there were no agency relationships, no joint accounts, and no contracts" reflected in the stipulation of fact linking Appellee, CFNA, and J. P. Morgan in a manner that supports the argument that Appellee obtained anything from CFNA. As we clarified in *Williams*, for purposes of Article 121, UCMJ, it does not matter who suffered a "loss" or "harm" as a result of Appellee's actions—rather the proper object of a larceny is the "person or entity from whom the accused *actually* obtained the goods or money." 75 M.J. at 134 (emphasis added). J. P. Morgan, not CFNA, was the entity presenting the funds—and the stipulation and charge sheet should have reflected that or the

military judge should have inquired further to flesh out any basis for an alternative charging theory.

Because he did not do so, the military judge failed to obtain from the accused an adequate basis in law and fact to support the plea of guilty to the larceny specification as charged. Thus, the ACCA was correct in holding that the military judge abused his discretion in failing to reject Appellee's guilty plea and entering a finding of guilty as to the larceny specification. The military judge's finding of guilty with regard to Additional Charge I, alleging that Appellee committed larceny against CFNA is set aside.[4]

**B.**

The ACCA erred, however, in setting aside Appellee's conspiracy conviction on the same grounds as the larceny conviction. Conspiracy, an inchoate offense, is proscribed under Article 81, UCMJ. *United States v. Anzalone*, 43 M.J. 322, 323 (C.A.A.F. 1995). The President has listed two elements for this offense:

> (1) That the accused entered into an agreement with one or more persons to commit an offense under the [UCMJ]; and

> (2) That while the agreement continued to exist, and while the accused remained a party to the agreement, the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing out the object of the conspiracy.

*MCM* pt. IV, para. 5.b.

Conspiracy punishes the *agreement* to commit a crime, *United States v. Crusoe*, 3 C.M.A. 793, 796, 14 C.M.R. 211, 214 (1954); *Anzalone*, 43 M.J. at 324, and factual impossibility is no defense to conspiracy. *United States v. Roeseler*, 55 M.J. 286, 291 (C.A.A.F. 2001) (citing *United States v. Valigura*, 54 M.J. 187, 189 (C.A.A.F. 2000)); *see MCM* pt. IV, para. 5.c.(7). In such cases, an accused "should be treated in accordance with the facts as he or she supposed them to be." *Roeseler,* 55 M.J. at 291 (citing *United States v. Thomas*, 13 C.M.A. 278, 286, 32 C.M.R. 278, 286 (1962) (affirming con-

---

[4] *But see infra* Section II.C.

victions for attempted rape and conspiracy to rape a dead person)).

Here, the providence inquiry and the stipulation of fact show an agreement between Appellee and Sgt. Ramos to use funds from the CFNA account in order to pay personal debts. Appellee performed overt acts in furtherance of the conspiracy such as arranging for Sgt. Ramos to receive the account information. The fact that the funds were actually obtained from J. P. Morgan is of no moment. *Roeseler*, 55 M.J. at 291. There is no substantial basis in law or fact to question Appellee's guilty plea to the conspiracy to commit larceny specification.

## C.

An attempt, like a conspiracy, is an inchoate offense. *United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003). Thus, while not addressed by the ACCA, we conclude that the stipulation of fact and the military judge's providence inquiry provide an adequate basis to affirm a finding of guilty to the lesser included offense of attempted larceny under Article 80, UCMJ, for similar reasons to those mentioned above. *See MCM* pt. IV, para. 46.d.(1)(b); Article 59(b), UCMJ ("Any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense.").

Appellee admitted to performing overt acts, namely obtaining and withholding property that he believed belonged to CFNA. These acts were done with the specific intent to commit a larceny by permanently depriving CFNA of the money at issue, and constituted more than mere preparation. Appellee did, in fact, commit and plead guilty to larceny—he was merely mistaken about who he was stealing from. *See MCM* pt. IV, para. 4.c.(3) ("A person who purposely engages in conduct which would constitute the offense if the attendant circumstances were as that person believed them to be is guilty of an attempt."); *see also Roeseler*, 55 M.J. at 291 (citing *Thomas*, 13 C.M.A. at 286–87, 32 C.M.R. at 286–87, 290). Appellee's admissions during the providence inquiry, together with the stipulation of fact, establish all the elements of the lesser included offense of attempted larceny

and we affirm a finding of guilty to that offense. *See* Article 59(b), UCMJ; *see also United States v. Mitchell*, 66 M.J. 176, 180 (C.A.A.F. 2008).

## III.

The decision of the United States Army Court of Criminal Appeals is affirmed in part and reversed in part. For Additional Charge I, alleging larceny, the finding of guilty by the military judge is set aside as to the larceny itself but we affirm a finding of guilty to the lesser included offense of attempted larceny. For Additional Charge II, alleging a conspiracy to commit larceny, the finding of guilty by the military judge is affirmed. The record is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for reassessment of the sentence in light of the affirmed findings.